IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EUNICE J. WINZER, *et al.*,  §
                             §
        Plaintiffs,          §
                             §
v.                           §          Civil Action No. 3:15-CV-01284-N
                             §
KAUFMAN COUNTY, *et al.*,    §
                             §
        Defendants.          §

## ORDER

This Order addresses Defendants Bill Cuellar, Garry Huddleston, and Matthew Hinds's motion to dismiss and for summary judgment [45], motion for leave to file supplement to appendix [50], and motion to strike [66].  The Court grants the motion to dismiss and for summary judgment, denies the motion for leave, and grants the motion to strike in part.

### I. ORIGINS OF THE MOTION

This case arises from the police-involved shooting death of Gabriel Winzer.[1]  The undisputed facts show that, on April 27, 2013, two Kaufman County Sheriff's Office deputies, Gerardo Hinojosa and Defendant Matthew Hinds, responded to several 9-1-1 reports of an armed man who was firing a gun and destroying mailboxes in the vicinity of County Road 316 in Terrell, Texas.  One caller reported that the suspect had yelled,

---

[1]The following recitation of undisputed facts is drawn from Appendix in Support of Plaintiffs' Response [63] ("Plaintiffs' Appendix") and from Appendix to Memorandum in Support of Defendants' Motion [47].

"Everyone's going to get theirs," and he wanted to "get back what's mine."  The police dispatcher relayed these reports to responding officers.

Hinojosa and Hinds arrived in marked patrol vehicles and located a suspect near the intersection of County Road 316 and County Road 316A.  The suspect was a black male wearing a brown shirt.  The deputies positioned their vehicles approximately 100 to 150 yards away.  In their voluntary statements, the deputies wrote that the man fired one round in their direction.  Hinojosa and Hinds saw white smoke rise from the gun, and Hinojosa heard a whizz go by.    Hinds reported over the radio, "Shots fired."  The deputies did not return fire.  The suspect then walked toward County Road 316A, out of the officers' view.

Shortly thereafter, another Sheriff's deputy and two state troopers from the Texas Department of Public Safety arrived at the scene.  A few people had stepped out of their homes to observe the event, and the officers instructed them to go back inside.  Using the PA system, the officers identified themselves as Kaufman County Sheriff's Office and ordered the suspect several times to drop his gun and come toward them.  The suspect ducked into the tree line and out of sight.  The officers proceeded down County Road 316A on foot, using Hinojosa's Tahoe for cover.  The officers had their weapons drawn.

A black male, later identified as G. Winzer, then entered County Road 316A on a bicycle approximately 100 yards down the road from the officers.  G. Winzer was wearing a blue shirt and was riding his bicycle towards the officers.  In their voluntary statements, the officers wrote that G. Winzer appeared to be holding a gun and was raising his arm in their direction.  One officer commented that G. Winzer had "that gun."  Another officer yelled for G. Winzer to put the gun down.  About six seconds after G. Winzer's appearance, one of the

officers fired a shot in his direction.  There was a brief pause, and then the officers fired a volley of shots at G. Winzer.  G. Winzer turned his bicycle to the left and then disappeared from view.

Several minutes later, the officers located G. Winzer in the backyard of a home on County Road 316A.  The officers later determined that G. Winzer's father, Henry Winzer, lived at the house.  G. Winzer had suffered four gunshot wounds to his chest, shoulder, and upper back.  H. Winzer was near his son, trying to comfort and revive him.  H. Winzer was wearing a brown shirt.  The officers ordered H. Winzer to step away from his son and asked where the gun was.  H. Winzer tossed a plastic toy gun in the officers' direction.  The officers attempted to place handcuffs on G. Winzer's wrists, but he resisted.  The officers tased G. Winzer, and once they had succeeded in handcuffing him, permitted the paramedics to enter the backyard.  The paramedics pronounced G. Winzer dead at the scene.  A forensic report later detected the presence of gunshot residue on G. Winzer's body.

In their Third Amended Complaint, Plaintiffs Eunice J. Winzer, Soheila Winzer, and H. Winzer bring claims under 42 U.S.C. § 1983 and the Texas survival and wrongful death statute, Texas Civil Practice and Remedies Code § 71, against Defendants Kaufman County, Bill Cuellar, Garry Huddleston, and Matthew Hinds.  *See* Third Am. Compl. 8–15 [23]. Cuellar and Huddleston now move to dismiss the claims against them as barred by the statute of limitations.  Cuellar, Huddleston, and Hinds also move for summary judgment on the basis of qualified and official immunity.

## II. THE RELEVANT LEGAL STANDARDS

### A. The Rule 12(b)(6) Standard

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. The Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the

light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense.  *Celotex*, 477 U.S. at 322–25.  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'"  *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

ORDER – PAGE 5

### III. THE STATUTE OF LIMITATIONS BARS THE CLAIMS AGAINST
### CUELLAR AND HUDDLESTON

The Winzers' claims against Cuellar and Huddleston are barred by the statute of limitations. As explained in the Court's April 25, 2016 Order [69], the applicable statute of limitations required the Winzers to file their claims against Cuellar and Huddleston by April 27, 2015. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); TEX. CIV. PRAC. & REM. CODE § 16.003(a). The Winzers did not name Cuellar and Huddleston as defendants until they filed the Third Amended Complaint on September 21, 2015. *See* Third Am. Compl. [23]. Clearly, the Winzers failed to bring these claims within the applicable limitations period.

The Winzers nonetheless contend that their claims relate back to the filing of their original complaints. The Court may relate the Third Amended Complaint back to the dates of the Winzers' original complaints if: (1) the basic claim arose out of the conduct set forth in their original complaints; (2) the parties to be brought in received such notice that they will not be prejudiced in maintaining their defense; (3) the parties knew or should have known that, but for a mistake concerning identity, the action would have been brought against them; and (4) the second and third requirements were fulfilled within the prescribed limitations period. *See* FED. R. CIV. P. 15(c); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). Rule 15(c) is "meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." *Jacobsen*, 133 F.3d at 320 (internal quotation marks and citation omitted).

The Winzers' failure to name Cuellar and Huddleston as defendants was not due to misnomer or misidentification.  Neither Henry Winzer's Complaint, *see* Compl. [1], *in Henry A. Winzer v. Matthew Hinds, et al.*, Civil Action No. 3:15-CV-1295-N-BH (N.D. Tex. filed April 22, 2015), nor the Winzers' Notice of Claim [3] gave any indication that Cuellar and Huddleston were defendants.[2]  The Winzers argue that, at the time they filed their original complaints, they were appearing pro se and were under the mistaken impression that they could not sue the individual officers.  But the statute of limitations on section 1983 actions and the strict requirements of Rule 15(c) apply equally to represented and unrepresented plaintiffs.  *See, e.g.*, *Singleton v. Stiles*, 992 F.2d 323, 323 (5th Cir. 1993) (holding Rule 15(c) did not permit the addition of a defendant not named in an original pro se pleading because the plaintiff "never intended" to include the defendant in the original pleading).  The Winzers' "conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010).

Because neither Cuellar nor Huddleston knew or should have known that but for a mistake of identity he would have been named in the Winzers' original pleadings, Rule

---

[2]Throughout their original complaints, the Winzers allege that unnamed Kaufman County Sheriff's Office deputies were involved in the alleged constitutional violations.  *See* Compl. 4–5 [1], *in Henry A. Winzer v. Matthew Hinds, et al.*, Civil Action No. 3:15-CV-1295-N-BH (N.D. Tex. filed April 22, 2015); Notice of Claim 2–3 [3].  However, even if the Court assumes that these mentions implicate the unknown deputies as defendants, "Rule 15(c) does not apply when John Doe defendants are named after the statute of limitations has run."  *Myers v. Nash*, 464 Fed. App'x 348, 349 (5th Cir. 2012).

15(c)'s relation back provision does not apply.  Accordingly, the Court dismisses all claims against Cuellar and Huddleston.

## IV. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE AND SUPPLEMENTAL FILINGS

The parties filed multiple objections to evidence offered in support of and in opposition to Hinds's[3] motion for summary judgment.  Each party also objects to the Court's consideration of supplemental filings submitted in support of and in opposition to the motion. The Court considers each of these objections in turn.

### A. Motion to Strike the Winzers' Sur-Reply

The Winzers filed a response to Hinds's objections to their summary judgment evidence (the "Response") [65].  Hinds moves to strike the Response, arguing that it functions as a sur-reply to the motion for summary judgment.  The Winzers oppose the motion, and in the alternative, seek leave to file the Response as a sur-reply.

The Response is problematic because it cites new evidence not presented in the Winzers' original response to the motion for summary judgment.  The new evidence includes recent news coverage of the shooting and comments from the Kaufman County Sheriff.  *See* Resp. 4.  The remainder of the Response, however, serves the permissible purpose of responding to Hinds's objections.  Hinds made these objections for the first time in his reply, and the Winzers have not had any other opportunity to respond to them.

_____

[3]Cuellar and Huddleston also moved for summary judgment.  The analysis of Hinds's motion for summary judgment and the related objections and supplemental filings would have applied equally to these officers, had the statute of limitations not barred the Winzers' claims against them.

"[L]eave to file a surreply may be granted . . . to allow the nonmovants a chance to respond to the movant's newly-asserted theories or evidence." *See Lombardi v. Bank of Am.*, 2014 WL 988541, at *3 (N.D. Tex. 2014) (internal citation and quotation marks omitted). Because the Winzers have not had an opportunity to respond to Hinds's evidentiary objections, the Court grants leave to file the sur-reply. However, the Court strikes the new evidence presented in the Response and will not consider it in the course of deciding Hinds's motion for summary judgment.

### B. Objections to Summary Judgment Evidence

The parties objected to several pieces of evidence presented in support of and in opposition to the motion for summary judgment. Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). "[T]he admissibility of summary judgment evidence is subject to the same rules of admissibility applicable at trial." *Pegram v. Honewell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (quoting *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)).

Hinds objects to two expert affidavits that the Winzers submitted in support of their response to the motion. Expert testimony is admissible if: (1) the expert is qualified; (2) the testimony is relevant to the lawsuit; and (3) the testimony is reliable. FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Hinds asks the Court to disregard the testimony of forensic enhancement expert James Appleton because several of his statements fall outside his realm of expertise. The Court agrees that Appleton is not qualified to opine on G. Winzer's physical capabilities or the reasonableness of Hinds's

actions. *Cf. Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 226–27 (5th Cir. 2007) (excluding polymer scientist's testimony about tire design). The Court sustains this objection and strikes Appleton's statements regarding these subjects.

Hinds further asks the Court to disregard the testimony of law enforcement expert Jerry Staton. Hinds specifically objects to the following statements: (1) that the gun residue found on G. Winzer "could have been transferred" during his arrest, *see* Pls.' App. 13; (2) that there is "little doubt" the officers could have won a potential gunfight with G. Winzer, *see id.*; (3) that the 9-1-1 callers would have identified the suspect as G. Winzer if it was in fact him, *see id.* at 13–14; and (4) that there is "considerable doubt" as to whether G. Winzer was the person who shot at Hinds when he first arrived on the scene, *see id.* Upon consideration of a motion for summary judgment, the Court disregards "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). After evaluating Staton's affidavit, the Court agrees that Staton's statements regarding the gun residue and the 9-1-1 callers are speculative and lack foundation. The Court sustains Hinds's objections and will not consider these statements in deciding the summary judgment motion. The Court overrules Hinds's objections to the other statements.

Hinds also objects to an affidavit from H. Winzer because it conflicts with prior statements he made regarding G. Winzer's possession of a gun. In the affidavit, H. Winzer claims that G. Winzer was unarmed and did not have any object resembling a gun in his hands at the time of the shooting. This statement contradicts H. Winzer's prior allegation that G. Winzer was carrying a toy gun in his hand when he rode out on his bicycle. *See*

Compl. 4 [1], *in Henry A. Winzer v. Matthew Hinds, et al.*, Civil Action No. 3:15-CV-1295-N-BH (N.D. Tex. filed April 22, 2015); *see also* Attachments to Notice of Claim 12 [4]. Under the "sham affidavit" doctrine, a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1996). Because G. Winzer has not provided an explanation for his inconsistent statements, the Court sustains Hinds's objection. The Court will disregard H. Winzer's assertion that G. Winzer was not holding any object at the time of the shooting.

Lastly, the Winzers make several broad objections to the admissibility of the officers' affidavits. The Winzers argue that the affidavits contain unsubstantiated assertions and hearsay evidence, but the Winzers do not identify any particular examples. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56 (c)(4). However, without further elaboration from the Winzers, the Court is unable to determine which parts of the affidavits are at issue. *See, e.g.*, *Palo v. Dallas Cty.*, 2007 WL 2140590, at *8 (N.D. Tex. 2007) (rejecting overly general objections to summary judgment evidence because they may refer to admissible evidence). The Court overrules these objections.

### C. Motion for Leave to Supplement Hinds's Appendix

Hinds moves to supplement his appendix in support of the motion for summary judgment. Hinds's supplemental evidence consists of enhanced video and audio recording

of the moment at which the suspect allegedly fired a gun in the direction of first responders Hinds and Hinojosa.  The Court denies leave to submit this evidence.

Local Civil Rule 56.7 provides that a party may not file supplemental material without the Court's permission.  Hinds represents that he requested the enhanced video and audio recording prior to submitting his motion for summary judgment, but that the forensics laboratory did not return the final work product until a week after the motion deadline.  Hinds has not explained why the forensics laboratory was unable to return the report in time for its inclusion in his original appendix.  Hinds did not seek an extension of time to file the motion for summary judgment.  Moreover, the enhanced video and audio recording presents only minimally probative evidence.  No suspect is visible in the enhanced video.  And although the audio recording bolsters Hinds's claim that someone fired a gun at him, Hinds has other evidence to support this claim.

The Court holds that Hinds has not demonstrated good cause to include the late submission with his summary judgment appendix.  The Court denies Hinds leave to file the supplemental video and audio evidence.

## V. HINDS IS ENTITLED TO QUALIFIED IMMUNITY ON THE SECTION 1983 CLAIM

### A. The Qualified Immunity Standard

"Qualified immunity is a defense available to public officials performing discretionary functions ' . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This doctrine balances two interests: "the need to

hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court must consider two factors. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### B. Hinds's Use of Deadly Force Was Objectively Reasonable

The Winzers claim that Hinds used excessive force in violation of G. Winzer's constitutional rights under the Fourth Amendment. An excessive force claim requires proof of "(1) an injury, (2) which resulted from the use of force that was clearly excessive to the need, and (3) the excessiveness of which was objectively unreasonable." *See Mason v.*

*Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (internal quotation marks and citation omitted).  An officer's use of deadly force is not excessive when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

When evaluating the objective reasonableness of an officer's conduct, courts must "pay careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 276 (internal quotation marks and citation omitted).  Courts should "make 'allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).  Finally, when evaluating an officer's use of force, courts must view the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Hinds and his fellow officers were in an especially tense situation.  An armed and reportedly agitated individual had already shot at them once and disappeared.  The officers were uncertain of the suspect's whereabouts.  The parties presented conflicting evidence as to whether G. Winzer was the same person who fired upon Hinds, and for purposes of the summary judgment motion, the Court assumes that G. Winzer never fired upon the officers

ORDER – PAGE 14

himself.[4]  Nevertheless, a reasonable officer on the scene at the time could have easily drawn the inference that the black man cycling towards five armed police officers, disregarding their orders to drop his weapon, and raising his arm in their direction[5] was the same black man who had so brazenly fired upon them just around the corner.

The Winzers contend that G. Winzer was carrying a bright orange toy gun[6] at the time of the shooting and did not present any threat to the officers.  The Winzers also maintain that G. Winzer's appearance did not match the description given by 9-1-1 callers and relayed by the police dispatcher.  Somewhat contradictorily, the Winzers further assert that the officers were too far away from G. Winzer to positively identify him or to see the bright orange toy gun in his hand.  Perhaps most importantly, however, at least one of the officers, upon sighting G. Winzer, yelled at him to drop the gun.  Even if the other officers could not see the gun from that distance, they could have reasonably relied on this exclamation in forming the belief that G. Winzer was indeed armed.  In light of all the facts, the Court finds that

---

[4]In fact, the 9-1-1 callers and officers' descriptions of the suspect, G. Winzer, and H. Winzer all suggest that the officers initially encountered H. Winzer on County Road 316A. In his affidavit, H. Winzer admits that he was walking along County Road 316A shortly before the shooting and that he went inside his house after noticing a patrol car was following him.

[5]In his opinion, Staton claims, "Enhanced video from the event reveals Winzer was not armed and did not reach towards his waist band and then extend his arm like he was about to fire a gun." Pl.'s App. 13.  Appleton similarly opines, "Both of [G. Winzer's] hands appear to be on the handle bars. . . . [G. Winzer] makes no hand movements while riding his bicycle." *Id.* at 19.  After reviewing the submitted video, the Court finds these claims are unsubstantiated and disregards them for purposes of the summary judgment motion.

[6]The parties presented conflicting evidence as to whether G. Winzer was carrying a real gun, a cap gun, a realistic plastic gun, or a bright orange toy gun when he rode out on his bicycle.  For purposes of the summary judgment motion, the Court assumes that G. Winzer was holding a bright orange toy gun at the time of the shooting.

Hinds had probable cause to believe that G. Winzer posed a threat of serious physical harm to himself, his fellow officers, and other individuals in the neighborhood.[7]

The Winzers' law enforcement expert, Staton, opines that "[h]ad Winzer engaged [the officers] at that distance with a handgun there would be little doubt the officers would have easily 'won the gunfight.'" Pl.'s App. 13. The Court sees little relevance in this opinion. Police officers do not need to wait for an assailant to fire the first shot before taking actions to preserve their own lives. Staton's opinion also does not account for the safety of any bystanders in the area. When the armed suspect initially disappeared down County Road 316A, the officers proceeded slowly, using the Tahoe for cover, and instructed residents to get back inside their homes. And when G. Winzer suddenly appeared on the road, riding his bicycle towards the officers, they yelled at him to put the gun down. Staton does not offer any alternative protocol that the officers should have followed up to this point.

Hinds had probable cause to believe that G. Winzer posed a threat of serious bodily harm. His use of deadly force was objectively reasonable under the circumstances. Because Hinds did not violate G. Winzer's constitutional rights, the Court grants summary judgment in favor of Hinds on the Winzers' section 1983 claim.

---

[7]*See, e.g.*, *Bell v. City of East Cleveland*, 125 F.3d 855, 1997 WL 640116, at *3 (6th Cir. 1997) (holding officer had probable cause to use deadly force where 9-1-1 caller reported young victim had gun, victim disregarded officer's orders, and victim raised arm holding realistic toy gun in the officer's direction); *but see Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009) (reversing summary judgment where evidence contradicted officers' claim that they identified themselves as police officers, young victim had a real gun and not a toy gun, and victim raised hand with gun before shooting).

## VI. THE COURT GRANTS SUMMARY JUDGMENT ON THE STATE LAW CLAIMS

The Winzers bring claims under Texas state law for wrongful death and survival. "Texas law grants official immunity to an officer who was (1) performing discretionary duties; (2) in good faith; and (3) while acting within the scope of his authority." *Austin v. Johnson*, 328 F.3d 204, 210–11 (5th Cir. 2003) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). The Texas standard for official immunity is "substantially" the same as the federal test for qualified immunity. *Chambers*, 883 S.W.2d at 656. Because Hinds is entitled to qualified immunity on the section 1983 claim, the Court holds that he is entitled to official immunity on the state law claims as well. The Court grants summary judgment on the wrongful death and survival claims in favor of Hinds.

### CONCLUSION

The Court denies the motion for leave to supplement appendix. The Court grants in part and denies in part the motion to strike. The Court grants the motion to dismiss and for summary judgment. The Court dismisses all claims against Cuellar and Huddleston. The Court grants summary judgment on all claims against Hinds. The Winzers' claims against Defendant Kaufman County remain pending.

Signed August 10, 2016.

David C. Godbey
United States District Judge