IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EUNICE J. WINZER, *et al.*,           §
                                      §
      Plaintiffs,                  §
                                      §
v.                                    §           Civil Action No. 3:15-CV-01284-N
                                      §
KAUFMAN COUNTY, *et al.*,             §
                                      §
      Defendants.                  §

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Kaufman County's motion for summary judgment on all claims [128].  First, the Court denies the County's motion for protective order [131] as moot due to the close of discovery, and the Court denies Plaintiffs E. and S. Winzer's motion for leave to file a surreply [135].[1]  Second, the Court concludes that no genuine dispute of material fact exists and that the County is entitled to judgment as a matter of law, and the Court grants the motion for summary judgment.  Accordingly, the Court also denies as moot the County's motion to dismiss Plaintiff H. Winzer's claims for failure to prosecute [151] and both parties' motions in limine [143] [145].

---

[1] "Sur-replies are highly disfavored and are permitted only in exceptional or extraordinary circumstances." *Horton v. Med-Sense Guaranteed Ass'n*, 2021 WL 3832830, at *3 (N.D. Tex. 2021) (citing *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001)).  Plaintiffs have not identified "new issues, theories, or arguments that the movant raised for the first time in its reply brief or attempts to present new evidence at the reply stage," as is required to warrant surreply.  *Horton*, 2021 WL 3832830, at *3 (collecting cases).

# I. GABRIEL WINZER'S DEATH AND THE
## RESULTING LITIGATION

This case concerns a lethal law enforcement shooting in 2013. The circumstances giving rise to this litigation have been detailed in prior court orders, *see* Order Mots. Dismiss & Summ. J. [77]; *Winzer v. Kaufman Cnty.*, 916 F.3d 464 (5th Cir. 2019), and are summarized here. Gabriel Winzer (the "Decedent") was a 25-year-old black man with mental disabilities. On April 27, 2013, five officers responded to reports of an armed and agitated man on a rural street near the Decedent's home. The suspect shot at the first two officers to arrive at the scene before disappearing. Some time later, the Decedent appeared on a bicycle and began approaching the officers from approximately 100 yards away. He matched the 911 dispatch description of the suspect's race, but not the suspect's clothing. It is contested whether the Decedent had anything visibly in his hand, but within seconds, the officers ordered him to "put that down," and they fired at him within one second of their instructions. The officers located the Decedent several minutes later at his home with four gunshot wounds to his upper body. Once the officers permitted paramedics to enter the backyard, they pronounced the Decedent dead at the scene.

Plaintiffs initially brought claims under 42 U.S.C. § 1983 and the Texas survival and wrongful death statute[2] against several individual and municipal defendants. But Plaintiffs omitted the Cities of Terrell and Kaufman from the Third Amended Complaint ("3AC") [23], and the Court previously ruled in favor of the officers on the claims against them. Order Mots. Dismiss & Summ. J. 17. Plaintiffs appealed the Court's orders. The

---

[2] TEX. CIV. PRAC. & REM. CODE § 71.

MEMORANDUM OPINION AND ORDER – PAGE 2

Fifth Circuit found a factual dispute as to whether Officer Matthew Hinds committed a constitutional violation, but ultimately affirmed the Court's rulings as to all officer-defendants. *Winzer*, 916 F.3d at 476. Only Plaintiffs' claims[3] against Kaufman County remain on remand. *Id.* at 477.

## II. LEGAL STANDARDS

### A. Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential

---

[3] The parties dispute whether the 3AC states a cognizable ratification claim in addition to Plaintiffs' failure-to-train claim. To the extent the 3AC asserts ratification, the Court addresses it on summary judgment, *infra* Part IV.

MEMORANDUM OPINION AND ORDER – PAGE 3

element of the nonmovant's claim or affirmative defense or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a favorable verdict. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## *B.* Monell *Liability*

Plaintiffs may bring section 1983 claims against municipalities, but the statute does not permit vicarious liability. *Monell v. Dep't. of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). First, as in all section 1983 cases, Plaintiffs must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quotations omitted). But under *Monell*, municipal

MEMORANDUM OPINION AND ORDER – PAGE 4

liability also requires that an official policy or custom, promulgated by a final policymaker, be the moving force behind the violation of a constitutional right. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Advanced Tech. Bldg. Sols., LLC v. City of Jackson*, 817 F.3d 163, 165–66 (5th Cir. 2016).

### III. THE COURT GRANTS SUMMARY JUDGMENT ON PLAINTIFFS' FAILURE-TO-TRAIN CLAIM

The possibility that a reasonable jury could find wrongdoing by the officers, *see Winzer*, 916 F.3d at 476, is just one component of Plaintiffs' failure-to-train claim. Because the County cannot be held vicariously liable in a section 1983 case, even assuming that a constitutional violation did occur, Plaintiffs must nevertheless show additional wrongdoing by the County to survive summary judgment. The Court concludes that Plaintiffs have not carried their burden to demonstrate that the County failed to instruct its officers adequately on proper use of force.

### A. The Standard for Failure-to-Train Claims

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). In addition to proving a constitutional violation, Plaintiffs must also "prove that (1) the [County] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (cleaned up)).

The standard for municipal fault is stringent, and deliberate indifference ordinarily requires a "pattern of similar constitutional violations by untrained employees." *Peña*, 879 F.3d at 623 (quoting *Connick*, 563 U.S. at 62). The Fifth Circuit "has been wary of" finding municipal liability for a failure to train claim based on single incidents. *Pineda*, 291 F.3d at 334–35. Single violations create liability in only the most egregious cases,[4] such as where the dangerous "proclivities" of an officer impute knowledge to the government that existing training is insufficient, *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010) (citing *Brown v. Bryan*, 219 F.3d 450, 462 (5th Cir. 2000)), or where an "obvious need" for training exists, but the officer "was provided no training whatsoever." *Peña*, 879 F.3d at 624 (citations omitted).

The single-incident exception also applies when the policy at issue is facially unconstitutional. *See, e.g.*, *Davis v. Montgomery Cnty.*, 2009 WL 1226904, at *7 (S.D. Tex. 2009). In such cases, plaintiffs need not prove deliberate indifference because "[w]here an official policy or practice is unconstitutional on its face, it necessarily follows that a policymaker was not only aware of the specific policy, but was also aware that a constitutional violation [would] most likely occur." *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) (unpub.) (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)). Put differently, training on an unconstitutional policy is

---

[4] At least one court has also treated "extreme factual scenarios," a requirement in ratification cases, as a single-incident exception applicable to traditional *Monell* claims. *See, e.g.*, *Backe v. City of Galveston*, 2 F. Supp. 3d 988, 1001 (S.D. Tex. 2014); *see also infra* Part IV.A. But neither party raised it in the failure-to-train context, and for reasons discussed *infra* Part IV.A, it is not applicable here regardless.

inherently inadequate. However, plaintiffs still "must cite evidence which could prove that the policy was the moving force behind the violation." *Davis*, 2009 WL 1226904, at *8.

### B. The Single-Incident Exception Does Not Apply

Plaintiffs contend that Kaufman County may be held liable on a single-incident theory because its official use-of-force policies are inconsistent with *Graham v. Connor*, 490 U.S. 386 (1989). In Graham, the Supreme Court held that whether a use of force is excessive turns on its "objective reasonableness" rather than the officer's subjective state of mind. *Id.* at 398–99. Kaufman County's Manual of Rules and Procedures states the following:

> 9-4. Use of Physical and Deadly Force. The use of deadly force will be used [sic] only to prevent imminent death or serious bodily injury to human life, or imminent destruction to property, and no other means can be utilized to prevent the act.

Def.'s App. Supp. Mot. Summ. J., Ex. A, Manual of Rules and Procedures App. 35 [130]. The County also has a separate five-page Use of Force Policy that provides greater detail on the appropriate standards for deploying force. *Id.*, Ex. B. In part, it explains:

> (1) Reasonable Belief: When facts or circumstances the officer knows or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.
>
> (2) Force: That amount of "active power, strength, or energy" which is **REASONABLE** to overcome another person's physical resistance.
>
> **Texas Code of Criminal Procedure, Article 15.24.** What force may be used. In making an arrest, all reasonable means are permitted to be used in effecting that arrest. No greater force, however, shall be resorted to than is **REASONABLE** to secure the arrest and detention of the accused.

MEMORANDUM OPINION AND ORDER – PAGE 7

(4) Excessive Force: Force is excessive when its application is inappropriate to the circumstances, resulting in bodily injury, serious bodily injury or death to another person. The U.S. Supreme Court, in *Graham v. Connor*, 490 U.S. 386 (1989), set forth guidelines for determining whether force has been excessively applied: The primary concern being reasonableness in its application, as judged by the on-scene officer. In evaluating the reasonable application of force, officers must first consider their own age, size, strength, skill level with Sheriff's Office approved force options, state of health and the number of officers as opposed to the number of actors. Based on the reasonableness standard, the following considerations contribute to a determination of excessive force:

    (A)    The severity [o]f the crime;

    (B)    The nature and extent of the threat posed by the suspect;

    (C)    The degree to which the suspect resists arrest or detention; and

    (D)    An[y] attempts by the suspect to evade arrest by flight.

*Id.* at 115–16 (emphasis in original).  The Use of Force Policy further instructs officers that use of deadly force is not permitted unless the officer reasonably believes that capability, opportunity, and immediate danger are all present.  *Id.* at 118.  Additionally, the Policy explains the spectrum of available force options, *id.* at 119, training requirements relating to the use of force, *id.* at 117–18, and the probable cause, necessity, and warning requirements for using deadly force.  *Id.* § 7 at 116.

While section 9-4 of the Manual does not reference the objective reasonableness standard, the Use of Force Policy embraces the *Graham* approach.  Though the Policy centers on officers' "reasonable belief" that the use of force is justified, it ties the definition of reasonable belief to objective reasonableness by instructing officers to assess their real-time perceptions against whether "an ordinary and prudent person" would think similarly. It is an inescapable fact that officers in potential use-of-force situations must exercise their

best judgment, and the Policy advises officers how to do so in a way that comports with *Graham*. Accordingly, the County's use-of-force policies are not facially unconstitutional.

Further, even in the single-incident context, "it is the Plaintiff's burden to create a fact issue on the inadequacy of the training on the use of deadly force." *Rogers v. Bonnett*, 2009 WL 2175104, at *7 (W.D. Tex. 2009) (citing *Pineda*, 291 F.3d at 333). Plaintiffs have not demonstrated how excessive force incidents were a "highly probable" consequence of the County's policy. Indeed, courts consider it "highly predictable that a County's deputies will follow standards of behavior adopted and authorized by the County," meaning that constitutional violations will not normally be an obvious result of a policy that passes constitutional muster. *Davis*, 2009 WL 1226904, at *7. Nor have Plaintiffs pointed to evidence calling into question whether any of the involved officers had "dangerous proclivities" toward excessive force violations, such as a history of similar misconduct showing their propensities for violence, recklessness, or questionable judgment. *See Valle*, 613 F.3d at 549 (collecting cases).

There is also no evidence that Kaufman County failed to provide any training whatsoever on the use of force. On the contrary, the officers' Texas Commission on Law Enforcement ("TCLE") reports show that each had training on use of force prior to the shooting, and several had training on mental health crises. Def.'s App. Supp. Mot. Summ. J. 125–60. Further, the County's Field Training Program includes four phases of sixteen segments each, which covers use of force and mental health situations. *Id.*, Ex. D, Moosbrugger Decl. 162. And despite Plaintiffs' contentions, the officers' deposition

testimony does not indicate a total lack of training.  *See* Pls.' App. Supp. Resp. Mot. Summ. J., Ex. B, Wheeler Dep. 123:23–124:3, 125:8–21 (App. 229–30, 231) [133] (testifying to training courses that covered aspects of use of force, including Control Tactics and instructor licensing coursework); *Id.*, Ex. C., Cuellar Dep. 60:3–18, 61:3–8, 85:11–20 (App. 336, 337, 361) (testifying to training courses that covered aspects of use of force, including "Defensive Tactics," which officers "normally take . . . once a year or once every other year").

Plaintiffs have not created a fact issue as to any of the exceptions, and thus they cannot invoke single-incident liability.

### C.  *Plaintiffs Have Not Created a Fact Issue as to Key Elements of Their Claim*

Because the County's use-of-force policies are constitutional and no other single-incident theory of liability applies, Plaintiffs must demonstrate all three elements of their failure-to-train claim: that the County's use-of-force training was inadequate, the training deficiency was the moving force behind the alleged violation, and the County's failure to train constituted deliberate indifference to the use of excessive force.  The County argues that Plaintiffs lack evidence to support each element.

Plaintiffs contend that the County's training was deficient,[5] but even favorably construing their evidence as raising a fact issue over the training's adequacy, Plaintiffs

---

[5] Specifically, they cite the following portions of deposition testimony: (1) Officer Wheeler confirmed that his TCLE records did not reflect use-of-force training in the two years prior to the shooting, Wheeler Dep. App. 226–30 [133]; (2) Officer Wheeler stated that he believed his decision to shoot at someone 100 yards away was pursuant to his training and that deadly force was permitted if he was "in fear for his life and the life of the general public," *id.* at App. 191–93; (3) Officer Cuellar stated that he remembered having deadly

have not met their burden on the other two elements of their claim.  Plaintiffs rely solely on the theory that they need not show causation or deliberate indifference because the County's policies are facially unconstitutional.  *Id.* at 8.  But as discussed previously in Part III.B, the Court rejects that premise.  To survive summary judgment, Plaintiffs must point to evidence that the County's policies were the moving force behind the alleged violation, and they have not done so.  Further, Plaintiffs must show deliberate indifference, and they have not produced evidence of a pattern of similar constitutional violations.  Indeed, they do not dispute the County's assertion that it could only identify one other similar incident, which occurred approximately six years prior.  Def.'s Br. Supp. Mot. Summ. J. 18–19 [129]; *see* FED. R. CIV. P. 56(e)(1) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, . . . the court may consider the fact undisputed for purposes of the motion.").  Courts require more to conclude that a pattern exists.  *Cf. Moreno v. City of Dallas*, 2015 WL 3890467, at *9 (N.D. Tex. 2015) (holding that, given the size of the Dallas Police Department, "facts suggesting an average of less than two incidents of excessive force per year over the course of five years [were] not sufficient to indicate a pattern of abuses").  Because Plaintiffs have failed to create fact issues as to causation and deliberate indifference, their failure-to-train claim fails.

---

force training but could not recall the exact dates or the substance of the trainings, Cuellar Dep. App. 336–37; and (4) Officers Wheeler and Cuellar stated that section 9-4 of the Manual did not define "reasonable belief."  Wheeler Dep. App. 232–33, 241–43; Cuellar Dep. App. 375–76.  *See* Pl.'s Resp. Mot. Summ. J. 11 [132].

## IV. THE COURT GRANTS SUMMARY JUDGMENT
## ON PLAINTIFFS' RATIFICATION CLAIM

Plaintiffs also argue that, if the officers violated the Decedent's constitutional rights, Kaufman County is liable for ratifying their wrongful conduct. The parties dispute whether the 3AC adequately pleads liability based on ratification, but to the extent it does, the County argues that Plaintiffs cannot show key elements of their claim. Plaintiffs again cannot prevail without evidence that would allow a reasonable jury to find independent wrongdoing by the County, and the Court concludes they have not carried their burden.

### A. The Standard for Ratification Claims

*1. Demonstrating Approval.* – The Fifth Circuit has cautiously "cabined" *Monell* claims against municipalities based on their approval of their officers' conduct because limitations "are necessary to prevent the ratification theory from becoming [one] of *respondeat superior*." *Milam v. City of San Antonio*, 113 F. App'x 622, 626–27 (5th Cir. 2004) (unpub.). Accordingly, a municipality does not automatically ratify conduct later deemed to be unlawful by merely failing to discipline officers or even defending the conduct. *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)). Ratification occurs if a policymaker approves of unconstitutional conduct (1) with knowledge of "its underlying, improper basis," *Taylor v. Hartley*, 488 F. Supp. 3d 517, 537 (S.D. Tex. 2020); *see also Covington*, 812 F. App'x at 228; or (2) without knowledge of the conduct's true and unlawful nature, but the officer's actions were "manifestly indefensible," even if the policymaker "blindly

accepted" the officers' own version of events. *Cole v. Hunter*, 497 F. Supp. 3d 172, 186 (N.D. Tex. 2020) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

    *2. Causation.* – Ratification claims are not exempt from causation requirements. In *City of St. Louis v. Praprotnik*, the Supreme Court contextualized ratification within the traditional *Monell* framework, explaining that the reason a policymaker's approval of a subordinate's decision may be charged to the municipality is because the policymaker's decision to approve is itself final policy. 485 U.S. 112, 127 (1988). *Prapotnik* involved an employee's termination, where approval continued the alleged constitutional deprivation, and thus the causal relationship was not in question. *Id.* at 116–17. But *Praprotnik* also contemplates ratification liability where policymakers' decisions following a violation suggest that the conduct accords with some preexisting unofficial policy. *Id.* at 131 ("Refusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced."). Such ratification-style claims do not challenge policymakers' approval directly, but point to it as evidence of a preexisting policy that then caused the alleged violation, akin to an ordinary *Monell* claim.

    This Circuit has recognized both approaches to assessing whether "lackluster disciplinary responses" are actionable:

> First, municipal policymakers who fail to supervise and to discipline their police officers . . . could create municipal liability if the lack of supervision then caused a deprivation.
>
> Second, even though a policymaker's response to a particular incident may not cause the injury . . . *when combined with other evidence*, [it] could tend

to support an inference that there was a preexisting de facto policy of [the alleged unlawful conduct].

*Milam*, 113 F. App'x at 628 (emphasis added).  Even after *Praprotnik*, the Fifth Circuit "has consistently emphasized the causation requirement."  *Camacho v. City of El Paso*, 2016 WL 3519662, at *13 (W.D. Tex. 2016) (collecting cases); *Milam*, 113 F. App'x at 627 ("[A]ny violation must be causally traceable to [policymakers], not just to their subordinates.").

Courts have observed the difficulty, if not impossibility, of demonstrating a causal relationship between a single incident of police misconduct and the municipality's subsequent investigation.  *See, e.g.*, *Milam*, 113 F. App'x at 628 ("[I]t is hard to see how a policymaker's ineffectual or nonexistent response to an [illegal arrest], which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation.") (emphasis in original); *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 795 (S.D. Tex. 2013) ("In contrast [with the employment context], it is difficult to understand how the subsequent ratification of a subordinate's excessive use of force is a *cause* of that completed violation.") (emphasis in original).  *but see Hobart*, 916 F. Supp. 2d at 795 (collecting cases) (noting that courts in this Circuit have considered such claims "at least theoretically possible").  Ratification-style claims in excessive force cases almost always take the second approach, which requires additional supporting evidence.  *See Camacho*, 2016 WL 3519662, at *13 (collecting cases) ("Thus, this Court joins other courts in questioning the viability of a ratification theory independent of indicia of a pre-existing

policy or custom analysis in the excessive force context due to the lack of logically possible causation.").

   *3.  The "Extreme Factual Circumstances" Requirement. –* In *Grandstaff v. City of Borger*, the Fifth Circuit held that it was proper to infer a preexisting policy or custom where "no reprimands, no discharges, and no admissions of error" were made following "incompetent and catastrophic" police performance on a single night.  767 F.2d 161, 171 (5th Cir. 1985).  Since *Grandstaff*, courts in this Circuit have continued to "limit[] the theory of ratification to 'extreme factual situations.'"  *Peterson*, 588 F.3d at 848 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).  Extreme scenarios include "obvious violation[s] of clearly established law," *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009), and "collective conduct of many individuals and multiple bad acts."  *Fuentes v. Nueces Cnty.*, 689 F. App'x 775, 779 (5th Cir. 2017) (unpub.); *see, e.g.*, *Backe v. City of Galveston*, 2 F. Supp. 3d 988, 1001 (S.D. Tex. 2014) (holding that a "truly extreme factual scenario" existed where "the events of a single night" involved "thirteen alleged victims, twenty alleged perpetrators or accomplices, and forty-nine separate alleged acts of police brutality," although not in the context of a ratification claim).  Courts have been lenient to plaintiffs on the other *Monell* elements of causation and deliberate indifference where extreme facts were present.  *See, e.g.*, *Hobart*, 916 F. Supp. 2d at 796–98 (assessing only approval where concluding that *Granstaff* applied).

The "extreme factual scenario" exception permitting ratification liability has an "extremely high" bar. *Camacho*, 2016 WL 3519662, at *16. Accordingly, it "has not enjoyed wide application in this Circuit," *Snyder*, 142 F.3d at 797, and it is especially rare in the excessive force context. *See Hobart*, 916 F. Supp. 2d at 796 (noting "the lack of any other successful ratification claims premised on excessive use of force" besides *Grandstaff*); *Echols v. Gardiner*, 2013 WL 6243736, at *16 (S.D. Tex. 2013) (citing *Hobart*, noting that "the only case where the Fifth Circuit seems to have upheld ratification in the context of excessive force is [*Grandstaff*]"). Where constitutional violations do not meet that bar, plaintiffs may nevertheless attempt to pursue an ordinary *Monell* claim — though without the benefit of exemption from fully demonstrating additional evidence of preexisting policy. *Contra Hobart* 916 F. Supp. 2d at 796 (reasoning that requiring extreme factual scenarios excludes some violations from the scope of municipal liability).

Plaintiffs ask this Court to forego application of *Grandstaff*, arguing that some courts have questioned the origins of the limitation. *See, e.g.*, *Hobart*, 916 F. Supp. 2d at 796. But regardless of its wisdom,[6] *Grandstaff* and its progeny are still good law without

---

[6] Requiring extreme facts reinforces other aspects of ratification doctrine. First, whether a case involves extreme facts often tracks whether the conduct at issue was manifestly indefensible. *See, e.g.*, *id.* at 796–98 (holding that a fact issue existed on manifest indefensibility where the extreme facts requirement was satisfied). Additionally, where Plaintiffs seek liability for ratification following a single incident — the context of *Grandstaff* and its most common application — permitting liability strains *Monell* concepts of causation and deliberate indifference. As discussed previously in the failure-to-train context, courts hesitate to permit liability premised on isolated events. Ratification claims often arise from approval decisions made in response to a specific incident. Thus, at least where plaintiffs seek to use policymakers' incident response to establish a preexisting policy as the moving force behind an alleged deprivation, the requirement functions like

any explicit exception, and this Court is bound by Fifth Circuit precedent. *Id.* at 796. To premise the County's liability on its investigation of the shooting and failure to discipline the officers involved, the facts must be sufficiently extreme.

### B. Extreme Factual Circumstances Are Not Present

The Decedent's death is tragic. However, as evidenced by *Grandstaff*'s apparent singularity among excessive force cases, an officer's conduct may have consequences of great magnitude while still falling short of what courts have held to be "extreme" factual circumstances.

Extreme scenarios exist, for one, where there is an "obvious" violation of "clearly established law," and those circumstances are not present. This Court is bound by the Fifth Circuit's determinations in this case: the Decedent's right to be free from excessive force was not clearly established. *Winzer*, 916 F.3d at 476–77.

Declining to apply *Grandstaff* is consistent with circuit case law, as other courts have rejected ratification liability in similar or even more extreme cases. *See, e.g.*, *Echols*, 2013 WL 6243736, at *2, *16 (officer drew weapon on allegedly armed suspect, but five witness accounts contradicted that suspect had a taser, suspect asked, "What are you going to do? Shoot me?" before officer shot at him nine times, and five of eight shots that hit suspect entered through his back); *Camacho*, 2016 WL 3519662, at *2–3, *16 (allegedly:

---

other single-incident exceptions already discussed; "it may be reasonable to allow the inference of a pre-existing policy from ratification," overcoming the additional evidence requirement, "only when the actions that have been ratified are particularly outrageous." *Id.* at 796; *see Studzinski v. City of Austin*, 2020 WL 8674122, at *1 (W.D. Tex. 2020) (reasoning that requiring extreme circumstances prevents "turn[ing] any use of force incident where the officer was not reprimanded into grounds for municipal liability").

(1) officers pursued plaintiff, a suspect of a nonviolent property crime, in a vehicle not permitted to conduct traffic stops, resulting in plaintiff crashing into a light pole; (2) plaintiff sustained a broken nose, facial bone, and ribs from officers punching his head into the pavement and knee-striking his midsection "without justification;" (3) officers knowingly falsified facts to justify the use of force; and (4) officers told others at the crash site they were doing so).  And Plaintiffs have not cited any new evidence making this case comparable to others where courts have applied the exception.  *See, e.g.*, *Grandstaff*, 767 F.2d at 168, 171 (officers "showed no inclination to avoid inflicting unnecessary harm upon innocent people" when they did not exercise "the least care" or use "any rational and organized plan" before they "poured gunfire" into truck that they thought might have been occupied by a fleeing suspect, killing the truck's civilian owner); *Hobart*, 916 F. Supp. 2d at 796–97 (officer allegedly fired "an extraordinary number of gunshots" at someone who "was not a criminal suspect, but a civilian," who "was known to be unarmed" and "may well have been retreating" when he was shot).  Plaintiffs have not carried their burden to demonstrate that the "extreme facts" requirement is satisfied.  That alone entitles the County to judgment as a matter of law on Plaintiffs' ratification claim,[7] but the Court turns to the remaining arguments nonetheless.

### C.  No Evidence of Knowing Approval or Manifest Indefensibility

Furthermore, the County argues that there is no evidence of manifest indefensibility — necessarily implying that because the conduct was not improper, the

---

[7] The Court concludes that the County adequately raised the "extreme facts" requirement in its opening brief, *see* Def.'s Br. 26, or alternatively that Plaintiffs had reasonable notice

MEMORANDUM OPINION AND ORDER – PAGE 18

county policymaker could not have knowingly approved of its unlawful basis.  Plaintiffs have not carried their burden to demonstrate either.

 Under Texas law, Kaufman County Sheriff Byrnes was the County's final policymaker as to law enforcement, and he oversaw the investigation of the shooting. *Taylor*, 488 F. Supp. 3d at 538 (citing *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) (collecting cases)).  In this case, Byrnes enlisted the assistance of the Texas Rangers to act as an unbiased third-party investigator.  Pls.' App., Ex. A, Byrnes Dep., 17:6–18:25, App. 19–20.  The Rangers found no criminal wrongdoing, and Byrnes relied on their report in deciding not to discipline the involved officers.  *Id.* 66:7–67:6, 84:1–7, App. 68–69, 86. Plaintiffs have not countered the County's position on manifest indefensibility with evidence; instead, they contend that the Rangers' investigation was inadequate, and Byrnes should have informed himself of the facts of the shooting more thoroughly, which should be equated to knowing approval.

 Permitting liability for excessive force premised on what amounts to an independent negligence claim would directly contravene the vast body of case law warning against reducing *Monell* to a *respondeat superior* doctrine.  "[N]egligent ignorance has the same effect in law as actual knowledge" only in certain ordinary torts cases, *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968) (quoting *Flack v. First Nat'l Bank of Dalhart*, 148 Tex. 495, 500–01 (1950)); as already discussed, the *Monell* line of cases requires more.  And even

---

of and time to respond to the argument, *see* Pls.' Resp. 23–24, making it a proper ground for summary judgment.  FED. R. CIV. P. 56(f)(2).

while Byrnes' allegedly lackluster investigation[8] may constitute wrongdoing attributable to the County, it did not directly cause the violation of the Decedent's constitutional rights that Plaintiffs allege. Stronger causal relationships have been present in cases where other courts have allowed imposing liability based on inadequate investigation. *See, e.g.*, *Hobart*, 916 F. Supp. 2d at 796–98 (extreme facts requirement satisfied); *Santibanes v. City of Tomball*, 654 F. Supp. 2d 593, 613–14 (S.D. Tex. 2009) (describing affirmative approval of conduct that directly violated numerous explicit city policies); *cf. Camacho*, 2016 WL 3519662, at *13 (following discussion of *Hobart* and *Santibanes* by noting that ratification is still subject to causation analysis). If Byrnes' actions suggest that a custom of failing to conduct adequate investigations motivated the officers to disregard the Constitution, Plaintiffs have not carried their burden to articulate that argument and support it with additional evidence.

Because Plaintiffs have not created a fact issue as to knowing approval or approval of manifestly indefensible conduct, their ratification argument is not actionable, and the County is entitled to summary judgment.

## CONCLUSION

Plaintiffs have not answered the County's no-evidence assertions by demonstrating genuine factual disputes on whether they can establish the challenged elements of their

---

[8] Deposition testimony reveals the following: officers were not questioned until five to six days after the shooting, Wheeler Dep. 42:23–25, App. 148; Byrnes never reviewed the Rangers' final report, Byrnes Dep. 67:20–22, App. 69; and the County did not conduct its own internal civil investigation to accompany the Rangers' criminal investigation. *Id.* 66:7–18, App. 68.

MEMORANDUM OPINION AND ORDER – PAGE 20

claims.  Accordingly, the Court grants Kaufman County's motion for summary judgment on all claims.

Signed March 14, 2023.

David C. Godbey
Chief United States District Judge